34 C.C.P.A. (Patents)

In re LUXENBERGER et al.
Patent Appeal No. 5219.

Court of Customs and Patent Appeals.
Dec. 9, 1946.

Lester G. Budlong, of New York City (Chas. C. Willson, of New York City, and Elmer Stewart, of Washington, D. C., of counsel), for appellants.

W.W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office rejecting all of the claims (Nos. 14 and 45 to 54, inclusive) in appellants' application for a patent for an alleged invention relating to apparatus for the production of vulcanized sponge rubber articles, such as cushions, mattresses and other articles.

Appellants' apparatus is designed to produce sponge rubber articles from "foamed" latex. The latex is first subjected to ammonia and air to produce latex foam. By means of appellants' apparatus the latex foam is transferred by an overhead conveyor from a supply source to molds where the articles are formed. The articles so formed are then vulcanized, removed from the molds, transferred by means of another overhead conveyor to a washing station where they are washed to remove non-rubber constituents, thence to a wringing or compressing device to remove the washing fluid, and thence to a drying apparatus.

In its decision, the board affirmed the decision of the Primary Examiner of Division 27 rejecting claims 45, 46, and 47, and the decision of the Primary Examiner of Division 15 rejecting claims 14 and 48 to 54, inclusive.

In rejecting claims 45, 46, and 47, which are directed particularly to washing apparatus designed to wash vulcanized sponge rubber articles by alternately compressing the articles and permitting them to expand in a washing bath so as to remove undesirable materials therefrom, the Pri-

mary Examiner of Division 27 relied upon the following references: Berger, 983,530, February 7, 1911; Berger, 1,071,022, August 26, 1913; Hayes-Gratze, 1,914,599, June 20, 1933.

Except as hereinafter noted, claim 45 is illustrative of that group of claims. It reads: "45. In apparatus for finishing vulcanized sponge rubber articles, washing apparatus comprising a tank adapted to contain liquid, a plurality of pairs of opposed pressure rolls beneath the level of the liquid means for yieldingly urging the rolls together, an idler roll between adjacent pairs of pressure rolls and out of alignment with the pressure rolls of such pairs, a pair of continuous conveying elements passing between the pressure rolls of each pair, one of said conveying elements being passed around the idler roll to separate the conveying elements between adjacent pairs of pressure rolls and means for moving the conveying elements at the same linear speed."

In addition to the elements called for by quoted claim 45, claim 46 includes a statement as to the degree of separation of the conveying elements—belts, and claim 47 calls for "means for simultaneously adjusting the resistance of all the pressure rolls * * *."

Appealed claims 14 and 48 to 54, inclusive, were rejected by the Primary Examiner of Division 15 on the following references: Berthel, 1,382,948, June 28, 1921; Pade, 1,677,868, July 17, 1928; Fischer, 1,948,344, February 20, 1934; Abbott et al., 2,112,513, March 29, 1938; Brown, 2,208,536, July 16, 1940; Bryen, 1,510,580, October 7, 1924; Honderich, 2,309,590, January 26, 1943; Spooner, 1,500,776, July 8, 1924.

Appealed claim 14, and appealed claim 48 which, except as hereinafter noted, is illustrative of claims 49 to 54, inclusive, read:

"14. Apparatus for treating vulcanized sponge rubber articles comprising a washing station including a tank, means for feeding an article through said tank, means associated with said feeding means for successively compressing and relaxing said article during its travel through said tank,

a compressing station comprising a pair of opposed endless articulated belts, means for coordinately driving opposed surfaces of the belts, means for adjusting the distance between said surfaces, a receptacle beneath said belts for receiving washing liquid removed thereby and means cooperating with said stations for automatically conveying an article from one to the other."

"48. In an apparatus for producing vulcanized sponge rubber articles, in combination, an endless conveyor, an article support on the conveyor, a washer, a feeding conveyor disposed below the first conveyor for delivering articles to the washer, means responsive to the arrival of the support above the feeding conveyor for releasing an article carried thereby onto the feeding conveyor, means for continuously conveying articles through the washer, and means for conveying washing articles from the washer."

In addition to the apparatus called for by appealed claim 48, appealed claim 51 calls for a plurality of article supports on the endless conveyor, a pair of washers, a pair of feeding conveyors for delivering articles to the washers, and means for releasing articles carried by some of the supports on to one feeding conveyor, and means for releasing articles carried by the remaining supports on to another feeding conveyor.

Claims 52 and 53 differ from quoted claim 48 in that they call for means for releasing articles at a predetermined point so that they may be delivered to the washer and thence through the washer to the compressor.

Claim 54 differs from claim 48 in that it calls for a drier in addition to the other elements called for by that claim.

In the apparatus disclosed in appellants' application, the "foamed" rubber latex is delivered from a source of supply to a container which is suspended from a trolley movable along an overhead truck. The container is moved into position adjacent any one of a series of molds, and is tilted to discharge the latex into the mold. The mold is then closed and heated to vulcanize the latex, thus forming a sponge rubber

cushion. The cushion is removed by hand from the mold and placed on the supporting arm of an overhead conveyor. The conveyor moves the cushion to a point above the end of a conveyor belt, and the arm is then tripped so that the cushion falls on to the belt, and is conveyed by the belt to a washer.

The washer comprises two belts which receive the cushions between them and move them through a body of cleaning liquid. At spaced points the belts pass between pairs of rollers which hold them close together, thus squeezing the liquid from the cushions and, at points between the pairs of squeezing rollers, one belt passes over an idler roller which pulls it away from the other belt, thus allowing the cushions to expand and absorb liquid. From the washer the cushions pass to a compressor consisting of two traveling belts which squeeze the cushions between them and then pass them between the rolls of a wringer. From the wringer the cushions are moved through a drier, after which they are placed on the carriage of another overhead conveyor and transported to the finishing station where they may be trimmed, stamped or otherwise manipulated.

Appellants also provide two washers arranged side by side, each provided with its own belt conveyor, compressor, wringer, and drier. Cushions may be delivered from the molds to either of those washers, thus increasing the capacity of the assembly.

The patent to Abbott et al. discloses an apparatus for producing latex tubes. In the patentees' apparatus the mandrels on which the tubes are to be formed are moved by a conveyor through a washer to a latex tank, where they are dipped, so that the latex is deposited on the mandrel in the desired form. The conveyor then moves the rubber articles thus formed on the mandrels to a station where they are dipped in glycerine and thence to a vulcanizing station and finally to the point where the articles are stripped from the mandrels.

The patent to Pade relates to the production of inner tubes for tires. The tubes are formed from rubber sheets which are

cut to size and rolled into tube form. The tubes are placed on hooks depending from an overhead conveyor and carried to a wrapping station. After being wrapped they are transported by another conveyor to carriages on which they are taken to vulcanizers. After vulcanization the tubes are moved on the carriages to an unwrapping station and thence to a finishing station.

The patent to Brown discloses an apparatus for forming rubber articles in which latex is poured into molds which are carried by a conveyor through a vulcanizer and then to a device which removes the articles from the molds.

The patent to Berthel discloses an apparatus for vulcanizing automobile tires in which the tires pass through the vulcanizing oven on a conveyor. An overhead conveyor is provided for transporting the tire molds to the position where they are to be used.

The patent to Fischer discloses an apparatus in which rubber heels are moved by a conveyor to and through a vulcanizing device and then to an unloading station.

The patents to Bryen, Spooner, and Honderich disclose conveyor devices which are designed to be tripped automatically and caused to drop their load at the desired point. In the Bryen and Honderich devices the articles carried are rubber tires.

The patent to Hayes-Gratze relates to a device for "washing or cleaning yarns, textile fabrics or the like." In one form of the apparatus disclosed by the patentee the material to be cleaned is delivered by a conveyor to the space between two traveling belts. The belts move below the surface of a cleaning liquid and pass, at intervals, between pairs of spring pressed rollers which force them together to squeeze liquid from the material. So-called "stream lined guide plates * * * arranged at the sides of and between the belts" and between the pairs of rollers force the belts apart.

The patent to Berger, No. 983,530, discloses an apparatus for dyeing loose material in which the material is transported between two belts which are first forced close to each other by pressure rollers and then separated by means of an idler roller which moves one belt away from the other. After passing over the idler roller, the first belt is again forced into a position close to the other belt by means of another roller.

The patent to Berger, No. 1,071,022, discloses a different arrangement for separating two belts which have been passed together over squeezing rollers. This patent, in our opinion, is not as pertinent as the patent to Berger, No. 983,530.

■ Claims 45, 46, and 47, which are directed to appellants' washing apparatus, have been rejected on the patent to Hayes-Gratze in view of either of the patents to Berger, No. 983,530 or No. 1,071,022. Each of those claims, in its introductory clause, states that the apparatus is "for finishing sponge rubber articles." Although the Hayes-Gratze patent does not mention such articles, it does mention "yarns, textile fabrics or the like." The apparatus disclosed in the patent is clearly adapted to the cleaning of a wide variety of compressible materials and, in our opinion invention would not be involved merely in applying the patentee's apparatus to such a well known compressible material as sponge rubber.

■ The only structural distinction presented by claim 45 over the Hayes-Gratze patent is the statement that the belts between the pressure rollers are separated by passing one of them over an idler roller. As hereinbefore noted, in Hayes-Gratze patent, the separation is effected by guide plates at the edges of the belts. The guide plates serve the same purpose as appellants' idler roller and, moreover, the use of an idler roller for separating a similar pair of belts is disclosed in the patent to Berger, No. 983,530. We are of opinion that the substitution of such an idler roller for the guide plates disclosed in the patent to Hayes-Gratze would not involve invention.

■ Claim 46 adds to the combination of claim 45 the statement that the conveying elements—belts—are separated to an extent greater than the maximum free thickness of the articles being cleaned. The Hayes-Gratze patent does not specify that degree of separation but, since the

purpose of the separation is to allow the material between the belts to expand and absorb liquid, it would be obvious to separate the belts to an extent at least equal to the free thickness of the material, in order to permit the greatest possible expansion and absorption. Moreover, the exact amount of separation of the belts is merely a matter of degree and does not involve invention.

■ Claim 47 adds to the combination of claim 45 "means for simultaneously adjusting the resistance of all of the pressure rolls." Although the patent to Hayes-Gratze does not show such an arrangement in one form of his washing apparatus in which two belts are employed, he does disclose, in another form of his device, means for simultaneously adjusting the pressure on two pairs of pressure rollers. We are of opinion that the use of such an expedient on the pressure rollers of the form of the Hayes-Gratze device in which two belts are employed would not involve invention.

■ Claim 14 calls for a washing device, a compressing device, and means for moving sponge rubber articles being treated, from the washer to the compressing device. That claim was rejected by the Primary Examiner on the patent to Hayes-Gratze in view of the common practice of associating wringers with washing apparatus of various kinds. The examiner stated that "even if applicants' wringing apparatus was new, it would not amount to invention to attach it to a washing apparatus as it would be the expected thing to do."

The Board of Appeals affirmed the Primary Examiner's decision holding claim 14 unpatentable for the reasons assigned by him.

It is evident, we think, that neither the washer nor the compressor called for by claim 14 performs any new or different function by reason of the fact that it is associated with the other. The operation of the washer is not affected in any new or different way by the fact that the washed articles, after leaving it, go to appellants' specific compressor. Furthermore, the compressor performs exactly the same drying operation as in the prior art, whether the wet articles which it receives are delivered from the particular washer claimed or from some other source. We are of opinion that the tribunals of the Patent Office reached the right conclusion and that the apparatus defined in claim 14 does not involve invention.

■ The Board of Appeals held that the various elements called for by claims 48 to 54, inclusive, did not depend upon each other in such manner as to produce a patentable combination. The board pointed out that each of those elements was old individually, as disclosed by the prior art, and that each element merely performed its separate, old, and well known function and that those claims, therefore, merely defined aggregations of independent elements.

We are of opinion that there is no patentable coaction between the elements called for by claims 48 to 54, inclusive. Accordingly, the board's statement that the references "are not in themselves suggestive of combining the various kinds of apparatus of the claims" is immaterial so far as the question of patentability is concerned. See Grinnell Washing Mach. Co. v. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196.

■ Although the Board of Appeals rejected claims 48 to 54, inclusive on other grounds, it is unnecessary, in view of our holding in respect to those claims, that we consider those grounds of rejection. We have given careful consideration to the issues presented by counsel for appellants but are unable to concur in their views that the appealed claims involve patentable subject matter.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.